**William LEE and Denver Nursing Home, Inc.**

**v.**

**Leonard MIHALICH, Individually and in his Official Capacity; Bradford King, Individually and in his Official Capacity; Leroy Zimmerman, Individually and in his Official Capacity; Robert Gentzel, Individually and in his Official Capacity; and Leslie Solove.**

**Appeal of Leonard MIHALICH, J. Bradford King and Leslie Solove.**

**No. 87–1583.**

United States Court of Appeals, Third Circuit.

Argued Feb. 25, 1988.

Decided May 17, 1988.

LeRoy S. Zimmerman, Atty. Gen., David M. Donaldson (argued), Gregory R. Neuhauser, Sr. Deputy Attys. Gen., Andrew S. Gordon, Chief Deputy Atty. Gen., Philadelphia, Pa., for appellants.

Gilbert B. Abramson, Michael B. Tolcott (argued), Abramson, Cogan, Kogan, Freedman & Thall, P.C., Philadelphia, Pa., for appellees William Lee and Denver Nursing Home.

Before BECKER, HUTCHINSON and SCIRICA, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

William Lee and the Denver Nursing Home, Inc., brought suit in the district court against Leonard Mihalich and Bradford King seeking damages for abuse of process and malicious prosecution under 42 U.S.C.A. § 1983 (West 1981).[1] Both Mihalich and King are investigators in the Medicaid Fraud Control Unit of the Office of the Pennsylvania Attorney General. Lee and the home brought suit seeking damages and attorney's fees after the Court of Common Pleas of Lancaster County held that a criminal prosecution against them for Medicaid fraud was time-barred. In this civil proceeding, King and Mihalich brought a motion before the district court seeking dismissal of the actions against them on the grounds of qualified immunity. The district court denied the motion; the investigators appeal. The trial court has jurisdiction under 28 U.S.C.A. § 1331 (West Supp.1988). An order denying a summary judgment motion for qualified immunity is an appealable final order. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985); *Hynson v. City of Chester,* 827 F.2d 932, 933 (3d Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 702, 98 L.Ed.2d 653 (1988). Therefore, we have jurisdiction pursuant to 28 U.S.C.A. § 1291 (West Supp.1987).

Because Mihalich and King seek review of the district court's order denying their motion for summary judgment on the basis of qualified immunity, our standard of review over this legal question is plenary. *Hynson,* 827 F.2d at 934. We hold that the investigators, as a matter of law, are entitled to qualified immunity from liability stemming from this incident. We will therefore vacate the district court's order denying King and Mihalich's motion for summary judgment. In so ruling, we apply the usual Fed.R.Civ.P. 56(c) standard of absence of any genuine issue of material fact necessary to the determination of qualified immunity under the law relating to that subject.

I

Appellee William Lee was the owner of the Denver Nursing Home. In December of 1979, Leonard Mihalich, an investigator for the Commonwealth's Medicaid Fraud Control Unit, was assigned to investigate Lee and his nursing home. The home was a participant in Pennsylvania's Medicaid Assistance Program and received federal

---

1. Additionally, claims were made against Leroy Zimmerman, Attorney General of the Commonwealth of Pennsylvania, Robert Gentzel, an employee in the Office of the Attorney General, and Leslie Solove, a former employee of the Denver Nursing Home. The district court granted Mr. Gentzel's motion for judgment on the pleadings. However, the district court record before us does not indicate how the claims against Mr. Zimmerman and Ms. Solove have been determined.

reimbursements for certain allowable expenses. After receiving documents from the Pennsylvania Department of Public Welfare which indicated an accounting analysis might lead to the discovery of improprieties in claims for reimbursements, the Fraud Unit determined that further investigation into the home's operation was necessary. Bradford King, also an investigator for the Fraud Unit, joined the investigation in June, 1980. Neither Mihalich nor King is an attorney.

The investigation focused on a series of cost reports filed for the fiscal years ending September 30, 1977, 1978 and 1979. Apparently, the last report was filed on January 11, 1980.[2] A search warrant, executed in July of 1981, turned up additional evidence purportedly demonstrating fraudulent procurement of Medicaid reimbursements. Following this investigation, on January 12, 1982, King and Mihalich caused two sixty-four count informations alleging Medicaid fraud to be filed against Lee and the Denver Nursing Home. Lancaster County Common Pleas held a two year statute of limitations applied. Because the prosecution was not begun within two years of the last criminal act, it dismissed the actions.

Common Pleas applied Section 5552(a) of Title 42 of the Pennsylvania Consolidated Statutes, 42 Pa.Cons.Stat.Ann. § 5552(a) (Purdon Supp.1987). It requires that criminal prosecutions generally must be brought within two years after the offense is committed. Here, assuming, as did Common Pleas, that the last criminal act occurred on January 11, 1980, the informations filed on

January 12, 1982 were untimely if § 5552(a) applies. The investigators had sought to invoke an exception to § 5552(a) set forth at 42 Pa.Cons.Stat.Ann. § 5552(c)(1) (Purdon 1981). It allows a criminal action to be brought within one year of the "discovery" of the offense where fraud is a material element of that offense.[3] The Commonwealth had argued before Common Pleas that the fraud was not discovered until execution of the search warrant in July, 1981. If so, the January 12, 1982 informations would be timely under the one year extension of § 5552(c)(1).

Common Pleas rejected the argument and held that the two year statute of limitations barred the criminal action. The court assumed that if the investigators had enough evidence to support the issuance of criminal complaints they had it "by early November of 1980." Common Pleas considered the evidence secured in July of 1981 by execution of the search warrant only cumulative to the earlier evidence the investigators had uncovered. Accordingly, Common Pleas dismissed the criminal charges against Lee and the nursing home.

After dismissal of the criminal actions, Lee and the Denver Nursing Home brought the instant suit in the district court. Their complaint sought damages and attorney's fees under 42 U.S.C.A. § 1983 and 42 U.S.C.A. § 1988 (West 1981) for malicious prosecution and abuse of process.[4] They contend that the prosecution was malicious because the investigators disregarded a clear statute of limitations ban.

---

**2.** Appellees Lee and the home, in their brief, state that the last criminal act which gave rise to the prosecution was committed on December 21, 1979 with the filing of the fiscal year 1979 report. Brief for Appellees at 5. We have relied upon Common Pleas' determination as to the date of the last criminal act. This discrepancy in no way bears on the outcome.

**3.** 42 Pa.Cons.Stat.Ann. § 5552(c)(1) provides, in pertinent part:

(c) Exceptions.—If the period prescribed in subsection (a) ... has expired, a prosecution may nevertheless be commenced for:

(1) Any offense a material element of which is either fraud or a breach of fiduciary

obligation within one year after discovery of the offense by an aggrieved party or by a person who has a legal duty to represent an aggrieved party and who is himself not a party to the offense, but in no case shall this paragraph extend the period of limitation otherwise applicable by more than three years.

**4.** The district court dismissed the abuse of process claim. *Lee v. Mihalich*, No. 83–2093, slip op. at 7–9 (E.D.Pa. June 2, 1987) [available on WESTLAW, 1987 WL 11905]. A number of other claims were dismissed in an earlier order of the district court. *Id.* at 2 n. 1. Apparently all that remains is the malicious prosecution claim under 42 U.S.C.A. § 1983.

## II

 Generally, government officials performing discretionary functions enjoy qualified immunity from civil damages for liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).[5] Qualified immunity serves to protect government officials from the personal costs of litigation and the attendant inhibiting effect of potential litigation upon the proper discharge of their official responsibilities. *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). In furtherance of these policies, the discriminant for qualified immunity focuses on the objective legal reasonableness of an official's acts under law which has been clearly established at the time he acts. *Harlow*, 457 U.S. at 818–19, 102 S.Ct. at 2738. In *Anderson*, the Supreme Court further defined the objective state of mind an official must show in order to establish qualified immunity. It said: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [I]n the light of preexisting law the unlawfulness must be apparent." 107 S.Ct. at 3039. Accordingly, we must determine whether investigators King and Mihalich could have reasonably believed that the criminal prosecution was lawful under the law in the light of the information they possessed when they acted. *Anderson*, 107 S.Ct. at 3040. Their subjective beliefs are not relevant to our inquiry. *Id.* Because this matter is before us on appeal from a denial of a motion for summary judgment on the ground of qualified immunity, we must reject King and Mihalich's appeal from its denial if we conclude a reasonable jury could find that the unlawfulness of their actions was so "apparent" that no reasonable investigator could have believed his actions were lawful. *Martin v. Malhoyt*, 830 F.2d 237, 253–54 (D.C.Cir. 1987) (citing *Anderson*, 107 S.Ct. at 3038). *See also* Fed.R.Civ.P. 56(c). If on the other hand a reasonable jury could not find that their belief in the lawfulness of their actions was unreasonable, we must reverse and direct the entry of summary judgment. Because the governing law was unclear at the time of the bringing of the charges and the investigators, Mihalich and King, relied upon the determination of a Medicaid Fraud Unit attorney that the prosecution was timely, we hold they are entitled to summary judgment on the basis of qualified immunity.

 Lee and his nursing home averred that the manipulation of the statute of limitations evidences King and Mihalich's malice. *See* Plaintiffs' Amended Complaint ¶ 4. A civil action for § 1983 malicious prosecution requires that: (1) the defendant initiate a criminal proceeding; (2) which ends in plaintiff's favor; (3) which was

---

5. As a threshold argument, Lee and his home contend that the investigators' reliance upon a Medicaid Fraud Control Unit attorney's determination that the suit was timely divests them of the discretion essential to the qualified immunity defense. We do not agree. The attorney's recommendation bears only upon the narrow legal question involved; *i.e.*, the impact of the relevant Pennsylvania limitations statutes on the criminal prosecution. The investigators still enjoy wide discretion in the proper exercise of their investigatory and charging functions. The attorney's opinion merely served the purpose of informing them of a key consideration affecting the exercise of their discretion. We cannot conclude on this basis that the investigators enjoy no discretion in evaluating considerations relevant to a decision whether and when to bring a criminal prosecution against a defendant. Certainly the investigators had discretion *not* to prosecute the action either if they felt their proof fell short of probable cause or if they felt the proof was insufficient to secure conviction, as well as discretion to decide when to commence it. To conclude that investigators in a state Attorney General's office serve only as robotic arms of the lawyers in that office would unduly inhibit discretion vital to the furtherance of important Commonwealth investigations. *Cf. Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987) (qualified immunity analysis does not turn on the precise nature of official's duties); *Malley v. Briggs*, 475 U.S. 335, 340, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) ("'For executive officers in general, ... qualified immunity represents the norm.'") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982)).

initiated without probable cause;[6] and (4) the defendant acts maliciously or for a purpose other than bringing the defendant to justice. *Bell v. Brennan,* 570 F.Supp. 1116, 1118 (E.D.Pa.1983). *See also Deary v. Three Un-named Police Officers,* 746 F.2d 185, 194 n. 11 (3d Cir.1984) (applying Virgin Islands law).[7] We have held that a claim for malicious prosecution is actionable under 42 U.S.C.A. § 1983. *Losch v. Borough of Parkesburg,* 736 F.2d 903, 907 (3d Cir.1984); *Jennings v. Shuman,* 567 F.2d 1213, 1219–20 (3d Cir.1977). Under these authorities, the § 1983 claim must include the elements of the common law tort as it has developed. Whether we look to the law of the forum, as we did in *Deary,* or general law, one of the elements of the common law tort is actual malice, a term of art in this as in other contexts. *Simpson v. Montgomery Ward & Co.,* 354 Pa. 87, 102, 46 A.2d 674, 681 (1946) (citing *Stewart v. Sonneborn,* 98 (8 Otto) U.S. 187, 25 L.Ed. 116 (1879)).[8] Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose. *Simpson,* 354 Pa. at 96, 46 A.2d at 678; *Ruffner v. Hooks,* 2 Pa. Superior Ct. 278,

282 (1896). *See also* Restatement (Second) of Torts § 668 (1977). Under this analysis, the elements of liability for the constitutional tort of malicious prosecution under § 1983 coincide with those of the common law tort. *Compare Cap v. K–Mart Discount Stores, Inc.,* 357 Pa. Superior Ct. 9, 12, 515 A.2d 52, 53 (1986) *with Bell v. Brennan, supra.* The clarity of Pennsylvania law on the statute of limitations issue and the information the investigators possessed are both relevant to the question of malice as it affects not only liability, but also qualified immunity.

Mihalich and King, in filing when they did, relied on 42 Pa.Cons.Stat.Ann. § 5552(c)(1) which allows the bringing of a criminal action within one year of the discovery of the offense where fraud is a material element of that offense. *See supra,* note 3. In so doing, they had to contend that they had not uncovered enough evidence to discover the existence of the offense of Medicaid fraud until after execution of the search warrant in July, 1981. Common Pleas rejected this contention and dismissed the informations. Because the Pennsylvania law was unclear as to what constituted "discovery" within the

---

**6.** We intimate no view on whether probable cause to commence a criminal prosecution by arrest or otherwise means something different than probable cause in the fourth amendment search and seizure context.

**7.** The district court held a genuine issue of material fact existed with respect to probable cause. Assuming that issue remains open it does not affect our holding that King and Mihalich are entitled to qualified immunity as a matter of law. If Lee and the nursing home were able to establish lack of probable cause on a remand to determine liability they would have established only one element of their claim for malicious prosecution. Because King and Mihalich, for the reasons given in the rest of this opinion, are entitled to qualified immunity we do not express any opinion on the issue of lack of probable cause, whether viewed from the standpoint of either liability or qualified immunity. Likewise, we express no opinion on the seemingly novel question of whether a criminal prosecution, dismissed solely because of a time bar, is determined in a plaintiff's favor for purposes of the constitutional tort of malicious prosecution. The Restatement indicates it is a favorable determination for purposes of the common law tort, but no opinions have been

found which so hold. Restatement (Second) of Torts § 659(d) (1977) (proceedings terminate in plaintiff's favor where indictment quashed). *See also Commonwealth v. Bestwick,* 489 Pa. 603, 616, 414 A.2d 1373, 1379 (1980) (suggesting, under Pennsylvania criminal procedure, motion to quash proper vehicle for terminating untimely criminal prosecution). *But see Lackner v. LaCroix,* 25 Cal.3d 747, 159 Cal.Rptr. 693, 602 P.2d 393 (1979) (dismissal on basis of statute of limitations not favorable termination for defendant within context of a malicious prosecution claim).

**8.** The *Simpson* opinion suggests that actual malice is necessary for the malicious prosecution tort. However, in *Hugee v. Pennsylvania R.R. Co.,* 376 Pa. 286, 101 A.2d 740 (1954), the Pennsylvania Supreme Court held that a rebuttable presumption of malice may arise after a finding of lack of probable cause. This inference bears only on the malice necessary for the common law tort. That liability element has a subjective component. After *Anderson,* an official's state of mind is irrelevant under the objective legal reasonableness test for qualified immunity.

meaning of the section of its law extending the statute of limitations for undiscovered offenses involving fraud or concealment, the Common Pleas holding does not establish the violation of clear law needed to supply the malice element of the constitutional tort.

A government official will be denied qualified immunity for having violated a clearly established right when "in the light of preexisting law the unlawfulness [is] apparent." *Anderson,* 107 S.Ct. at 3039. The state of the law must be considered at the time of the challenged action. *Mitchell,* 472 U.S. at 528, 105 S.Ct. at 2816. Case law is an obvious starting point for determining the clarity of a point of law at a particular time. *Procunier v. Navarette,* 434 U.S. 555, 564–65, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978); *Forsyth v. Kleindienst,* 729 F.2d 267, 277 (3d Cir.1984) (Weis, J., dissenting), *aff'd in part, rev'd in part, sub nom. Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

In dismissing the criminal action, Common Pleas held that King and Mihalich's July 1981 search did not uncover additional evidence of criminal activity. That court refused to accept Mihalich and King's contention that the criminal conduct was not "discovered" until the fruits of the search were examined. In so holding, Common Pleas relied primarily on the decision of the Pennsylvania Superior Court in *Commonwealth v. Hawkins,* 294 Pa.Superior Ct. 57, 439 A.2d 748 (1982). *Hawkins* offers some guidance on the question of when an offense is discovered for purposes of § 5552(c)(1) and arguably does support

Common Pleas' analysis. However, the decision has no bearing on these investigators' state of mind because it was filed after they acted in this case. Our research reveals no other Pennsylvania appellate court decision interpreting § 5552(c)(1), before or after the charges against Lee and Denver Nursing Home were filed. The absence of case law on this point leads us to conclude that the investigators' error in bringing these untimely charges could not be "apparent" to them when they brought them.[9]

### III

Of course, information otherwise available to the investigators on the application of the extended statute of limitations when the criminal informations were filed is also relevant to an assessment of the objective legal reasonableness of their actions, *i.e.,* whether their actions "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Before execution of the search warrant, King and Mihalich sought a legal opinion on the statute of limitations problem from John Hall, an attorney in the Medicaid Fraud Unit. Mr. Hall assigned the problem to Robert McIntyre, a legal intern in the Medicaid Fraud Unit, for research. Mr. McIntyre prepared a memorandum concluding that the extended statute of limitations set out at 42 Pa.Cons. Stat.Ann. § 5552(c)(1) would be available in the criminal action against Lee and his nursing home.[10] Mr. Hall then approved

---

**9.** Judge Perezous of the Court of Common Pleas of Lancaster County, in his opinion dismissing the informations, suggests that any problems surrounding the discovery of an offense could be remedied by amending the statute to set an "across-the-board" limit of five years. *Commonwealth v. Lee,* No. 236 of 1982, slip op. at 9 (Lanc. Cty. C.P. December 30, 1982). His observation supports our conclusion that the governing statute of limitations was unclear at the time these charges were brought and that decisional clarity was wholly unavailable when these charges were filed.

**10.** In analyzing the discovery of the offense problem, the legal memorandum relied upon the same two decisions, *People v. McGreal,* 4

Ill.App.3d 312, 278 N.E.2d 504 (1971), and *Mingenback v. Mingenback,* 176 Kan. 471, 271 P.2d 782 (1954), as the Pennsylvania Superior Court did in *Commonwealth v. Hawkins, supra.* It is the *Hawkins* decision upon which the Common Pleas judge relied in reaching the opposite conclusion to that reached in the legal memorandum. In addition, the memorandum concluded that a compulsion to proceed before full investigation could be completed would be unsound as a matter of policy. In that connection, it said: "These two cases seem to indicate that MFCU [Medical Fraud Control Unit] could delay filing a Complaint against a [Medicaid] provider until it knows that a criminal statute has been violated. This enables MFCU to conduct a complete

the execution of the search warrants.[11] Mr. Hall's approval of the search warrants and delaying the prosecution pending their execution demonstrates his corollary determination that later criminal prosecution would be timely. The text of the Hall file memorandum, whose existence is uncontradicted, and the circumstance that it was prepared after the investigators sought Hall's advice on the problem, coupled with the McIntyre legal memorandum on the issue, establishes that the investigators acted upon Hall's instructions to delay prosecution until they had executed the search and evaluated its results. Their action in following the Hall proposal was clearly reasonable, given the uncertain state of then existing Pennsylvania law.[12] *E.g., Street v. Cherba,* 662 F.2d 1037 (4th Cir.1981) (consultation with attorney relevant to determination that defendant entitled to qualified immunity).

Because the law pertaining to the controlling Pennsylvania statute of limitations was unclear and the investigators sought the advice of counsel before filing charges,

they could reasonably believe that their actions were lawful. On this record, no reasonable jury could find that the unlawfulness of the investigators' actions was so apparent that their claim of qualified immunity must be denied. Further inquiry into King and Mihalich's subjective motivation is therefore unnecessary and immaterial on the issue of qualified immunity. *Anderson,* 107 S.Ct. at 3040.[13] Accordingly, we will vacate the district court's order denying King and Mihalich summary judgment and remand the case to the district court with directions to enter judgment for King and Mihalich.[14]

---

investigation to make sure that any prosecution undertaken is not frivolous." App. at 546a.

**11.** Hall's approval and instructions are evidenced by the following file memorandum:

> July 21, 1981—Met with MEADE, MIHALICH, KING, HALLETT and KILLION to discuss course of action. Decision made to proceed as MFCU [Medical Fraud Control Unit] prosecution instead of Federal prosecution (as previously decided). Search warrants will be executed next week and, thereafter, charges will be filed by MIHALICH after evidence reviewed by MIHALICH, KING, HALLETT and Federal auditor.

App. at 547a.

**12.** There was Pennsylvania precedent available to the appellants on the "discovery rule" as it relates to the tolling of the statute of limitations in a civil proceeding. *See, e.g., Taylor v. Tukanowicz,* 290 Pa.Superior Ct. 581, 435 A.2d 181 (1981); *Coyne v. Porter-Hayden Co.,* 286 Pa.Superior Ct. 1, 428 A.2d 208 (1981). Unfortunately, these decisions fail to address the unique problem of this case, *i.e.,* whether the concept of probable cause in a criminal case serves as a

benchmark for the determination of "discovery" under § 5552(c)(1).

**13.** We note the argument of Lee and the nursing home that King and Mihalich's asserted reliance on McIntyre's legal memorandum and Hall's instructions to delay prosecution was nothing more than a sham. That contention goes to their subjective state of mind in bringing the prosecution in what turned out to be an untimely manner. As such, it would be arguably relevant in a claim for malicious prosecution on the liability question because the malice required at common law can be shown by the actor's personal disbelief in the propriety of his action. Restatement (Second) of Torts § 668 comment e (1977). It is not material on the issue of qualified immunity because the standard on that issue is objective reasonableness in the face of unclear law. *Anderson v. Creighton,* — U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). *See also Losch v. Borough of Parkesburg,* 736 F.2d 903, 907 (3d Cir.1984).

**14.** A remand is necessary since the record is not clear as to the status of the claims against the other defendants. *See supra,* note 1.