Phiiip KOSTA, Ellen M. Donato and
Frank Di Maio

v.

Mayor Jerry CONNOLLY, et al.

Civ. A. No. 88–1465.

United States District Court,
E.D. Pennsylvania.

March 15, 1989.

Carmen A. Cavacini, Holmes, Pa., for plaintiffs.

Joseph Goldberg, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

This action comes before the court on defendants' motion for summary judgment. In their complaint, plaintiffs allege, *inter alia*, that defendants violated their constitutional rights by prosecuting them for placing signs and posters on utility poles during a political campaign. For the reasons stated below, defendants' motion for summary judgment is denied.

## FACTS

During a 1987 political campaign in the Borough of Morton, plaintiffs Philip Kosta, Ellen M. Donato, and Frank Di Maio placed political posters on various utility poles throughout the Borough. Defendant Mayor Jerry Connolly allegedly received complaints from Borough residents about these posters and contacted one or more of the plaintiffs to inform them that they were in violation of the law. The next day Mayor Connolly allegedly instructed defendant Chief of Police George Souder to cite plaintiffs for violating 18 Pa. Cons. Stat.Ann. § 6503(a) (Purdon 1983) which provides as follows:

> A person is guilty of a summary offense if he pastes, paints, brands or stamps or in any manner whatsoever places upon or attaches to any building, fence, bridge, gate, outbuilding or other object, upon the grounds of any charitable, educational or penal institution of the Commonwealth, or upon any property belonging to the Commonwealth government, any political subdivision, or municipal or local authority, any written ... sign or poster ... without first having obtained the written consent of the owner, or tenant lawfully in possession or occupancy thereof.

After Souder issued these citations, a hearing was held in which a district justice found the plaintiffs guilty of the summary offense. Plaintiffs appealed that decision to the Court of Common Pleas of Delaware County and the judge dismissed the charges against plaintiffs when the Borough failed to appear.

Plaintiffs then filed a complaint in this Court alleging, *inter alia*, malicious prosecution, selective enforcement, a conspiracy to injure, oppress, threaten and intimidate plaintiffs, violation of the First, Fourth, Sixth, and Fourteenth Amendments to the Constitution, and violation of 42 U.S.C. § 1983, § 1985, and § 1986. Defendants now move for summary judgment because: (1) plaintiffs have admitted to violating the statute in question, and therefore, defendants did not violate any of their rights by prosecuting them; (2) the doctrine of qualified immunity shields the individual defendants from civil liability; and (3) *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), shields the defendant Borough from liability. We disagree with all of defendants' contentions.

## DISCUSSION

### A. Standard of Review

The standards to be observed in evaluating a motion for summary judgment are clear. Fed.R.Civ.P. 56(c) instructs a court to enter summary judgment when the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This rule provides the court with a useful tool when the critical facts are undisputed, facilitating the resolution of a pending controversy without the expense and delay of conducting a trial made unnecessary by the absence of factual dispute. *Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir.1982); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Summary judgment is inappropriate, however, where the evidence before the court reveals a genuine factual disagreement requiring submission to a jury. An issue is "genuine" only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* 106 S.Ct. at 2511. However, if the evidence is merely "colorable" or is "not significantly probative", summary judgment may be granted. *Id.*

In a summary judgment action, the moving party bears the initial burden of identifying for the court those portions of the record which it believes demonstrate the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Following such a showing in a case where the non-moving party is the plaintiff and therefore bears the burden of proof, it must by affidavits or by the depositions and admissions on file "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Id.* 106 S.Ct. at 2552–53; *Anderson, supra,* 106 S.Ct. at 2514; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(e). In making its ruling on a summary judgment motion, the court must view all inferences in a light most favorable to the non-moving party, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Continental Ins. Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982), must resolve all doubts against the moving party, *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985), and must take as true all allegations of the non-moving party that conflict with those of the movant, *Anderson, supra,* 106 S.Ct. at 2513.

### B. Request for Admissions

■ Defendants argue that because plaintiffs have not answered defendants' request for admissions, under F.R.Civ.P. 36(a)[1] we should consider the statements admitted. The requests for admissions would establish that plaintiffs posted signs on various utility poles, that Mayor Connolly requested plaintiffs to remove them, that plaintiff refused to remove them, that the police issued them citations, and that they were found guilty at a hearing before a magistrate. Accepting these statements in the requests for admission as conclusively proven facts, defendants argue that plaintiffs have admitted to violating 18 Pa. Cons. Stat.Ann. § 6503(a) (Purdon 1983).

■ The purpose of F.R.Civ.P. 36(a) is to expedite trial by eliminating the necessity of proving undisputed and peripheral issues. *Peter v. Arrien,* 319 F.Supp. 1348, 1349 (E.D.Pa.1970). We should not employ the rule to establish facts which are obviously in dispute or to answer questions of law. *Driver v. Gindy Manufacturing Corp.,* 24 F.R.D. 473, 475 (E.D.Pa.1959).

---

1. F.R.Civ.P. 36(a) provides in pertinent part that "[t]he matter is admitted unless within 30 days after service of the request ..., the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter...."

In the case at bar, the question whether the plaintiffs violated the statute is neither undisputed nor peripheral. The plaintiffs not only contested their guilt throughout the state proceedings, but they also prevailed on appeal. Moreover, the question of plaintiffs' guilt is central to this case. If plaintiffs admitted to violating the statute, they would effectively resolve the disputed issues of selective enforcement, malicious prosecution, violation of constitutional rights, etc. Clearly, that is not the plaintiffs' position, and Rule 36 is not intended to make it so. We will require, however, that plaintiffs respond to the requests for admissions within twenty days of this order.

C. Qualified Immunity

Defendants argue that they are entitled to qualified immunity for their actions taken against plaintiffs. In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The Court reasoned that because subjective inquiries generally entail broad ranging discovery that is "peculiarly disruptive of effective government," we must look only to the objective legal reasonableness of the officials' behavior; we must not consider the officials' subjective motivations. *Id.* 457 U.S. at 817–18, 102 S.Ct. at 2737–38. *See also, Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987). Because qualified immunity is an affirmative defense, defendants must show, without material factual dispute, that their actions were objectively reasonable in light of the clearly established law at the time they acted. *See Brown v. U.S.,* 851 F.2d 615, 620 (3d Cir. 1988). Under *Harlow,* defendants argue that because they prosecuted plaintiffs under a valid statute, they did not violate any of plaintiffs' clearly established statutory or constitutional rights. We disagree.

Defendants' argument is attractive because it appears that plaintiffs' position on selective enforcement[2] and malicious prosecution[3] depends upon an analysis of the defendants' states of mind—an inquiry *Harlow* specifically proscribed. While the Court in *Harlow* did not explain how courts should apply the objective standard when a plaintiff's claim depends on the state of mind of the defendant officials, *Anderson* made clear that we need not reintroduce into qualified immunity analysis the inquiry into officials' subjective intentions: The relevant question remains an objective, fact-specific question. *Anderson,* 107 S.Ct. at 3040. In the case at bar, we will examine only the objective facts surrounding the plaintiffs' prosecution, in a light most favorable to the plaintiffs, and determine whether there remains a genuine issue of material fact whether a reasonable officer could have believed his actions were lawful.

In a hearing before Magistrate Joseph L. DiPietro, Chief of Police Souder testified that he knew of no citations issued under 18 Pa. Cons. Stat.Ann. § 6503(a) (Purdon 1983) in the Borough of Morton in the past five years. (Plaintiffs' Exhibit A at p. 9–10). In addition, photographs submitted by plaintiffs reveal that there are several signs and posters on various Bor-

**2.** Selective enforcement is not per se violative of the constitution. *United States v. Ettorre,* 387 F.Supp. 582, 588 (E.D.Pa.1975); See *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962) In order to succeed on such a claim, the plaintiffs must establish: 1) that the persons, compared with others similarly situated were selectively treated; and 2) that such selective treatment was based on impermissable considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure

them. *United States v. Shober,* 489 F.Supp. 393 (E.D.Pa.1979) (citations omitted).

**3.** A civil action for § 1983 malicious prosecution requires that: 1) the defendants initiate a criminal proceeding; 2) which ends in plaintiffs' favor; 3) which was initiated without probable cause; and 4) the defendants act maliciously or for a purpose other than bringing the criminal defendants to justice. *Lee v. Mihalich,* 847 F.2d 66 (3d Cir.1988).

ough utility poles that would appear to be in violation of the statute. (Plaintiff's Exhibit C). On the other hand, defendants Souder and Connolly testified that after they decided to cite the plaintiffs, they attempted to or actually cited others who have posted signs on private property. (Plaintiff's Exhibit A at pp. 24–28, 31–35). The testimony does not clearly establish whether defendants arbitrarily or maliciously enforced the statute against the plaintiffs or whether they began enforcing the statute evenhandedly on the day the plaintiffs were cited.

In *Losch v. Borough of Parkesburg*, 736 F.2d 903 (3d Cir.1984), the plaintiff alleged that defendants maliciously prosecuted him in retaliation for voicing objections to police conduct. The court held that the district should not inquire whether the Pennsylvania criminal statutes under which they were prosecuted was clear; rather, the court should determine whether the plaintiff had clearly established rights to petition the government in the manner he did without suffering malicious prosecution. *Id.* at 909–10. *See also Bennis v. Gable*, 823 F.2d 723, 733 (3d Cir.1987) (defendants not entitled to qualified immunity where law clearly established that a public employee could not be demoted in retaliation for exercising his First Amendment rights). Similarly, in *Sullivan v. City of New Port Richey*, Case No. 85–459–Civ–T–17 (MD Fla. Sept. 13, 1988) (LEXIS, Genfed library, Dist file), the court denied defendant's motion for summary judgment where defendants allegedly selectively enforced city ordinances. The court held that without inquiring into the officials' subjective beliefs, there remained an objective, factual dispute as to defendants' motives. Thus, in the case at bar, defendants are not entitled to qualified immunity where there remains a factual issue whether they violated plaintiffs' clearly established constitutional rights to air their political views without suffering selective enforcement and malicious prosecution.

### D. Municipal Liability

■ Defendant Borough of Morton argues that *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), shields it from civil liability. In *Monell*, the Supreme Court held that a municipality may be liable under § 1983 where the alleged unconstitutional action "implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Id.* 436 U.S. at 658, 98 S.Ct. at 2019. Defendant argues that because Mayor Connolly and Chief Souder enforced a valid state ordinance which was adopted and promulgated by the state legislature rather than by the defendants, their actions can not be considered an implementation of an official policy. We disagree.

In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed. 2d 452 (1986), the Supreme Court held that under appropriate circumstances municipal liability may be imposed for a single decision by municipal policymakers. *Monell* makes clear that decisions made by those " 'whose acts or edicts may fairly be said to represent official policy' " may give rise to municipal liability under § 1983. *Id.* 106 S.Ct. at 1299 (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037). *See also Colburn v. Upper Darby Township*, 838 F.2d 663, 671–72 (3d Cir.1988). The court emphasized, however, that not every decision by a municipal policymaking official automatically subjects the municipality to § 1983 liability. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 480, 106 S.Ct. at 1298.

In the case at bar, both Chief of Police Souder and Mayor Connolly testified that Connolly directed Souder to issue the citations to plaintiffs. (Plaintiffs' Exhibit A at pp. 6 & 15–16). Interpreting the facts in a light most favorable to the plaintiff, we find that there is a genuine issue of material fact whether defendants selectively enforced the statute and maliciously prosecuted the plaintiffs. As discussed above, Souder testified that the plaintiffs were the first to be cited and prosecuted under the statute for at least five years, and the

photographic exhibits suggest that the defendants may not be as zealous in prosecuting other potential violators. Because the plaintiffs were cited and prosecuted for posting political posters, they have made a sufficient showing that the defendants selectively treated them as a punishment for exercising their First Amendment rights. The question arises, however, whether the Mayor possessed policymaking and final authority with respect to the actions ordered such that the Borough may be held liable for the injuries to plaintiffs. Whether an official has sufficient authority is a question of state law. *Pembaur*, 106 S.Ct. at 1300.

In a Pennsylvania borough, it is the duty of the mayor "to enforce the ordinances and regulations." 53 Pa.Stat.Ann. § 46029 (Purdon Supp.1978). In addition,

[t]he mayor of the borough shall have full charge and control of the chief of police and the police force, and he shall direct the time during which, the place where and the manner in which, the chief of police and the police force shall perform their duties....

53 Pa.Ann. § 46121 (Purdon 1966). This language makes clear that Mayor Connolly possessed final authority with respect to the issuance of citations to plaintiffs. Thus, *Monell* does not shield the Borough from liability. Defendants' motion for summary judgment is denied.

An appropriate order follows.

## ORDER

AND NOW, this 15th day of March, 1989, upon consideration of MOTION FOR SUMMARY JUDGMENT, filed by defendants on November 28, 1988 and ANSWER thereto, filed by plaintiff on December 13, 1988, it is hereby ORDERED that defendants' Motion is Denied.

It is further ordered, however, that plaintiffs respond to defendants' requests for admissions within twenty days of the date of this order.