Pearlie **PURDIE**, Jr.

v.

Margaret M. **TIERNEY**, Parole Agent, Individually and In Her Official Capacity.

Civ. A. No. 89–5557.

United States District Court, E.D. Pennsylvania.

Feb. 28, 1991.

James J. Ferrelli and Douglas W. Vicks, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for plaintiff.

Barry N. Kramer, Dept. Atty. Gen., Philadelphia, Pa., for defendant.

## MEMORANDUM UNDER
## FED.R.CIV.P. 52(a)

LUDWIG, District Judge.

This § 1983 action was filed against defendant Margaret M. Tierney, a state parole agent, employed by the Pennsylvania Board of Probation and Parole. In 1988 plaintiff Pearlie Purdie, Jr. was a parolee assigned to her for supervision. His claim is that "defendant deprived him of his liberty without due process of law by intentionally or recklessly causing his detention and recommitment as a technical parole violator," joint pre-trial stip. at 1; by not fairly investigating his alleged technical parole violation; by knowingly presenting the false and biased testimony of two witnesses to the Board of Probation and Parole; and by ignoring or failing to present to the Board favorable evidence of which she was aware. Complaint at 4. On revocation of his parole, plaintiff served about seven months backtime on his sentence. The relief requested includes compensatory damages and deletion of the parole violation from plaintiff's criminal record. The action was tried non-jury. Jurisdiction is federal question. 28 U.S.C. § 1331.

## I.

The following facts are part of a final pretrial stipulation or were not disputed at trial:

Plaintiff was released on parole from a Community Service Center located in Allentown, Pennsylvania in May 1988. The special conditions of his parole included ... no consumption of alcohol.... While plaintiff was forbidden from consuming alcohol, the special conditions of his parole did not prohibit him from entering establishments selling alcoholic beverages.

On November 30, 1988, plaintiff was arrested in Hondo's Bar by Detective Kirshner of the Allentown Police Department, and charged with the misdemeanor of harassment by communication. These charges were dismissed on or about December 8, 1988.

On the day of plaintiff's arrest, the arresting officer notified defendant Tierney that plaintiff was being held at the Lehigh County Jail. Because of the arrest, defendant submitted an order to the

Allentown Police Department to detain plaintiff for forty-eight hours.

On or about December 2, 1988, defendant went to Hondo's Bar to investigate plaintiff's activities. Barmaids Jamie Smith and Shelia Muthard told defendant that they had served plaintiff alcoholic beverages while he was in Hondo's Bar in July and August 1988. Defendant learned that Smith had had a prior relationship with Purdie which had ended.

Defendant charged plaintiff with violating a special condition of parole by consuming alcohol. In an Arrest Report prepared and signed by defendant on December 2, 1988, defendant recommended that plaintiff be detained pending the disposition of the harassment by communication charges, and that plaintiff be returned to custody as a technical parole violator. Thereafter, after the criminal charges against plaintiff had been dismissed, defendant again recommended revocation of parole for a technical violation of a special parole condition.

On January 30, 1989, plaintiff's parole revocation hearing was conducted, at which time defendant testified as to her investigation, and presented the testimony of Ms. Smith and Ms. Muthard. Based upon the hearing examiner's recommendation, the Board recommitted plaintiff to a State Correctional Institution as a technical parole violator. Plaintiff was eventually re-released from prison on parole on or about July 7, 1989. Thus, plaintiff was incarcerated as a result of the alleged technical parole violation from November 30, 1988 through July 7, 1989.

Joint pretrial stip. at 2-3.

The special conditions of plaintiff's parole included mandatory urinalysis. Pretrial stip. at 2. The results of all nine such tests were negative for drug use, and one of these, which included alcohol use, was also negative. Tr., July 26, 1990, at 63, 66; pltf. exh. 8. Defendant did not introduce this evidence at either the preliminary or the final parole revocation hearing. Tr., July 26, 1990, at 69-71.

On November 30, 1988, the day of plaintiff's arrest, the arresting officer told defendant that plaintiff did not appear to him to have been drinking that day. Id. at 72-73. On December 2, 1988 plaintiff told defendant that he had not consumed alcohol. Id. at 74.

Plaintiff waived his right to counsel and was unrepresented at the preliminary and final parole violation hearings on December 6, 1988 and January 30, 1989. Pltf. exh. 13.

On December 2, 1988, at Hondo's Bar, Ms. Smith told defendant that she had observed plaintiff drinking and had served him alcohol during July and August. Tr., July 26, 1990, at 92. Ms. Smith told defendant that she and plaintiff had been romantically involved, but that the relationship had ended and that they were no longer seeing each other. Id. at 91. Ms. Smith also told defendant that she was the person who had filed the criminal harassment by communication charges against plaintiff. Id. at 92-93.

Ms. Smith told defendant that plaintiff also had consumed alcohol at the Linden Bar in Allentown. Id. at 98. Defendant attempted to verify this information, but was unable to find anyone at the Linden Bar who knew plaintiff or Ms. Smith. Id. at 99.

Defendant did not record the names of patrons in Hondo's Bar with whom she talked on December 2, 1988. Id. at 98. None testified at the parole revocation hearing. Id. at 97.

Sheila Muthard also told defendant on December 2, 1988 that she had served plaintiff alcohol during June, July and August. Id. at 96. Defendant learned before the parole revocation hearing on January 30, 1989 that Ms. Muthard and Ms. Smith were friends. Id. at 75.

Both Ms. Smith and Ms. Muthard knew that defendant worked for the Pennsylvania Board of Probation and Parole when they answered her questions on December 2, 1988. Id. at 91, 95, 106.

Around December 8, 1988 defendant learned that the harassment by communica-

tion charges against plaintiff had been dropped. *Id.* at 83.

Between the preliminary parole revocation hearing on December 6, 1988 and the parole revocation hearing on January 30, 1989, defendant did no further investigation regarding plaintiff's alleged technical violation. *Id.* at 84.

Prior to charging plaintiff with violation of the special condition of his parole, defendant had one conversation with Ms. Smith and one with Ms. Muthard. *Id.* at 112.

Defendant served the subpoenas on Ms. Smith and Ms. Muthard, prepared them to testify, drove them to the hearing, and examined them before the hearing examiner on January 30, 1989. *Id.* at 84.

At the January 30, 1989 parole violation hearing, in addition to the arrest report and the testimony of Ms. Smith and Ms. Muthard, defendant introduced a violation report which stated that her reason for recommending that plaintiff be recommitted as a technical parole violator was that "client has an alcoholic background, arrested inside local bar." *Id.* at 78.

The testimony of Ms. Smith and Ms. Muthard was material to establishing the parole violation. *Id.* at 85.

Defendant recommended to the Parole Board on January 30, 1989 that plaintiff's parole be revoked as a technical parole violator. *Id.* at 80.

Although plaintiff knew he had the right to appeal, no appeal or exception was taken by plaintiff to the decision of the Pennsylvania Board of Probation and Parole to recommit him as a technical parole violator. *Id.* at 15; pltf. exh. 6.

## II.

The following facts are found from the evidence:

On December 1, 1988 defendant telephoned Tina Schwam, a bartender at Hondo's Bar. Ms. Schwam told her plaintiff drank alcohol in the bar and she had served him alcohol in the past. Tr., July 26, 1990, at 90.

Of the 20 or so patrons at Hondo's Bar during defendant's investigation on December 2, 1988, five acknowledged they knew Mr. Purdie and said they drank alcohol with him in July and August, 1988 or saw him drinking in the bar. *Id.* at 95, 110. No one denied that plaintiff had been drinking. *Id.* at 95.

On December 2, 1988 Ms. Smith told defendant at Hondo's Bar that she had not known plaintiff was on parole. *Id.* at 92. She advised defendant that she had filed the criminal charges because she was afraid of him, not to "get back" at him. *Id.* at 97. On December 2, 1988 defendant did not explain to Ms. Smith, Ms. Muthard or any of the bar patrons why she was questioning them. She refrained from advising them that plaintiff was on parole or that it was conditioned on non-consumption of alcohol until after she learned he had been drinking in the bar. She believed the information she had elicited to that effect because her informants were unaware of her purpose in asking them. *Id.* at 96.[1]

## III.

To prevail under 42 U.S.C. § 1983, plaintiff must establish: (1) that he was deprived of a right or privilege secured by the Constitution or the laws of the United States, and (2) that the conduct complained of was committed by a state actor. *See, e.g., Adickes v. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); *Colburn v. Upper Darby Town-*

---

1. Ruth Houser, a witness for plaintiff, testified she telephoned defendant and informed her on at least three or four occasions in December, 1988 that Mr. Purdie had not made harassing phone calls to Ms. Smith and that Ms. Smith and Ms. Muthard were angry and biased against him and wanted him punished for ending his relationship with Ms. Smith. Tr., August 9, 1990, at 6–8, 16–20. She said defendant seemed to be uninterested and merely repeated that there would be a hearing. *Id.* at 7, 12. Defendant testified she had no recollection or record of talking to Ms. Houser but that in any event "the phone calls were separate from the use of alcohol." Tr., July 26, 1990, 100–101. While Ms. Houser's testimony is credited to the extent of believing she telephoned defendant, the overall effect of her testimony is given little weight. It is not considered to be evidence of bias or hostility on defendant's part as to Mr. Purdie.

*ship*, 838 F.2d 663, 667 (3d Cir.1988). There is no dispute that defendant as a Pennsylvania parole agent acted under color of state law.

A constitutional liberty interest is at stake in the revocation of parole. "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee.... [This] liberty is valuable and must be seen as within the protections of the Fourteenth Amendment." *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 (1972). Given this important interest, parole revocation requires due process "to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Morrissey*, 408 U.S. at 484, 92 S.Ct. at 2602.

Here, the issue concerns defendant's role in the prosecution of a parole revocation vis-a-vis plaintiff's entitlement to due process protections.[2] The claim, as presented, may be analogized to false arrest or misuse of criminal process. As such, an essential element is lack of probable cause.

The proper inquiry in a section 1983 claim based on false arrest or misuse of

the criminal process is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense.

*Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir.1988).[3]

Our Circuit has "intimate[d] no view on whether probable cause to commence a criminal prosecution by arrest or otherwise means something different than probable cause in the fourth amendment search and seizure context." *Lee v. Mihalich*, 847 F.2d 66, 70 n. 6 (3d Cir.1988).

Probable cause to arrest exists where 'the facts and circumstances within [an officer's] knowledge and of which [that officer] had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed.' *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949).

*Edwards v. City of Philadelphia*, 860 F.2d 568, 571 n. 2 (3d Cir.1988). *See also Gerstein v. Pugh*, 420 U.S. 103, 112, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975).

At least eight eyewitness informants said plaintiff had consumed alcohol during the

---

2. A Pennsylvania Board of Probation and Parole regulation provides that:

> If an agent has reason to believe that a parolee has violated the conditions of his parole, that action of the Board is necessary, and that an arrest or the lodging of a detainer is appropriate, the agent may apply to his district supervisor for permission to arrest and for the issuance of a "Warrant to Commit and Retain" (PBPP–141).

37 Pa.Code § 71.1(a) (1990).

The prosecutorial duties of a Pennsylvania parole agent are not otherwise delineated. The authority to parole and to recommit is given in broad terms to the Board. 61 P.S. §§ 331.21, 331.21a (Purdon 1964 & Supp.1990). For example: "A parole board may revoke parole on the basis of an offense even if the parolee is never criminally charged or if he is acquitted or if the charges are dismissed prior to trial." *Brown v. Pa. Bd. of Probation and Parole*, 1989 WL 156360, 1 (E.D.Pa. December 15, 1989). *See also United States v. Chambers*, 429 F.2d 410, 411 (3d Cir.1970). An appeal of the Board's decision may be taken to the Pennsylvania Commonwealth Court.

3. Plaintiff asserts that defendant violated his constitutional liberty interest through reckless as well as intentional conduct. The Supreme Court has not decided "whether something less than intentional conduct, such as recklessness or 'gross-negligence,' is enough to trigger the protections of the Due Process Clause." *Daniels v. Williams*, 474 U.S. 327, 334 n. 3, 106 S.Ct. 662, 666 n. 3, 88 L.Ed.2d 662 (1986). Similarly, our Circuit has "not yet had occasion to define 'gross negligence' or distinguish it from 'reckless disregard' or 'reckless indifference' in the civil rights context." *Colburn v. Upper Darby Township*, 838 F.2d 663, 670 (3d Cir.1988). *See also Williams v. Borough of West Chester*, 891 F.2d 458, 464 n. 10 (3d Cir.1989) ("[W]e have not attempted to draw distinctions among terms like 'reckless indifference,' 'deliberate indifference,' 'gross negligence,' or 'reckless disregard' " in the context of the duty of care owed by custodial officials to detainees). However, inasmuch as defendant's conduct here is not found to have been an intentional or reckless deprivation of plaintiff's liberty interest, it is unnecessary to delve into these problematical areas.

summer months of 1988.[4] Given this information, defendant would seem to have been obligated to present the alleged technical violation to the Board for decision. It cannot be said she lacked reason to believe—or probable cause to believe—he had been drinking in violation of his parole.

### IV.

■ This § 1983 claim may also be likened to the common law tort of malicious prosecution. *See Losch v. Borough of Parkesburg*, 736 F.2d 903, 907 (3d Cir.1984) ("It is clear that the filing of charges without probable cause and for reasons of personal animosity is actionable under § 1983"). Inasmuch as federal law gives rise to a § 1983 claim, this is not a matter of state law. *Wilson v. Garcia*, 471 U.S. 261, 268–71, 105 S.Ct. 1938, 1943–44, 85 L.Ed.2d 254 (1985). However, "where a section 1983 claim is essentially for deprivation of civil rights through malicious prosecution, we look to common law elements of a malicious prosecution claim in judging the merits of the section 1983 action." *McMaster v. Cabinet for Human Resources*, 824 F.2d 518, 520 (6th Cir.1987). *See also Lee v. Mihalich*, 847 F.2d at 70 ("[T]he elements of liability for the constitutional tort of malicious prosecution under § 1983 coincide with those of the common law tort").

A civil action for § 1983 malicious prosecution requires that: (1) the defendant initiate a criminal proceeding; (2) which ends in plaintiff's favor; (3) which was initiated without probable cause; and (4) the defendant acts maliciously or for a purpose other than bringing the defendant to justice.

*Lee v. Mihalich*, 847 F.2d at 69–70 (footnote omitted). *See also Rose v. Bartle*, 871 F.2d 331, 349 (3d Cir.1989); *Bell v. Brennan*, 570 F.Supp. 1116, 1118 (E.D.Pa.1983).

■ Here, plaintiff has not proven three of these four necessary elements:

1. The proceedings, while initiated by defendant, were not concluded in plaintiff's favor. Instead, considering the hearing examiner's recommendation, the Board of Probation and Parole recommitted plaintiff as a technical parole violator.[5]

2. As previously discussed, plaintiff did not show that defendant lacked probable cause to initiate the parole revocation.[6]

3. There is no evidence that defendant acted "maliciously or for a purpose other than bringing the defendant to justice." *Lee v. Mihalich*, 847 F.2d at 70. Although the possibility exists of fabrication by a spurned Ms. Smith and her friend, Ms. Muthard, when defendant originally interviewed them—and in their testimony thereafter—their information was independently confirmed by another bartender and by various patrons at the bar. Moreover, even if Ms. Houser's testimony were credited as to Smith–Muthard's allegedly malicious motives, it does not rule out plaintiff's drinking. Plaintiff does not deny that he had the opportunity to present exculpatory matters to the hearing examiner and to the Board and to be represented by an attorney. He chose not to do so. He knew that the violation petition relied on the assertions of Ms. Smith and Ms. Muthard, which if believed would ultimately mean the revocation of his parole. He was aware that despite the early withdrawal of

---

4. The harassment charge lodged against plaintiff was itself enough to detain plaintiff as a parole violator. 61 P.S. § 331.21a (Purdon 1964 & Supp.1990); 37 Pa.Code § 71.1(a) (1990). When this charge was withdrawn, the technical violation remained. Defendant contends that only the Board could have lifted the detainer. It is apparent, however, that she did not recommend that it do so.

5. It is difficult to compare parole violation proceedings with a criminal trial. A parole violation may be shown by a preponderance of the evidence. *Sigafoos v. Pa. Bd. of Probation and Parole*, 94 Pa.Commw. 454, 503 A.2d 1076, 1079

(1986). Nevertheless, a finding of violation obviously is not a favorable termination. Plaintiff's failure to exhaust his state remedies to obtain a favorable termination may well have cut off his claim for a violation based on state law.

6. "Probable cause ... has been defined in malicious prosecution actions as 'a reasonable ground of suspicion supported by the circumstances.'" *Bell v. Brennan*, 570 F.Supp. 1116, 1119 n. 1 (E.D.Pa.1983). *See also Thomas v. E.J. Korvette, Inc.*, 476 F.2d 471, 474 (3d Cir.1973).

the criminal charge, defendant had persisted in the technical violation. That she could have investigated the case further or should have called all the alleged witnesses in the violation proceeding or presented evidence favorable to plaintiff does not amount to malice or necessary impropriety in carrying out her parole agent duties.

The testimony of Ms. Smith and Ms. Muthard as to plaintiff's drinking was accepted as credible by the hearing examiner and the Board as well as by this court. In these circumstances, defendant's allegedly improper conduct as a parole agent has not been proven.