Javier MORALES, Plaintiff,

v.

Maurice BUSBEE, Bruce Gilbert, and James W. Graham, Defendants.

Civil Action No. 95–1053 (JBS).

United States District Court,
D. New Jersey.

June 20, 1997.

Joseph Patrick Grimes, Grimes and Grimes, Cherry Hill, NJ, for Javier Morales.

Robert G. Millenky, Camden County Counsel by M. Lou Garty, Asst. County Counsel, Camden, NJ, for Bruce Gilbert.

Ralph R. Kramer, Haddon Heights, NJ, for Maurice Busbee.

Anthony M. Pugliese, Madden, Madden & Del Duca, Haddonfield, NJ, for James W. Graham.

## *OPINION*

SIMANDLE, District Judge.

This is a case brought pursuant to 42 U.S.C. § 1983 in which plaintiff, Javier Morales, seeks damages for his arrest, imprisonment, and indictment, which were allegedly carried out by the defendants with malice and without probable cause. Presently before the court are defendants' motions for summary judgment as to all counts of plaintiff's complaint. As explained below, defendant Busbee's summary judgment motion will be granted. The remaining defendants' summary judgment motions will be granted in part and denied in part.

### *Background*

On December 15, 1992, defendant Maurice Busbee, a Camden City Police Officer, was on patrol when he observed a white elderly man riding in an automobile along with two young Hispanic males. (Pl.Ex. 2). It was later determined that the elderly man's name was Robert Cooper. At a traffic light, Busbee stopped his police car along the side of the other automobile to ask the occupants some questions. (*Id.*). Because Cooper, who was sitting in the front passenger seat, appeared very nervous, Busbee instructed the driver of the car to pull the vehicle over to the side of the road. (*Id.*). Instead of pulling over, however, the driver drove away at a very fast speed. (*Id.*). Busbee pursued the car, and then watched as the car crashed into a fire hydrant. (*Id.*). The two Hispanic males fled from the car, and Busbee called for backup. (*Id.*).

The Camden City police officers responding to Busbee's call were not able to find the driver of the car, but they did apprehend the second Hispanic occupant of the car, named Hector Sepulveda. After waiving his *Mi-*

*randa* rights, Sepulveda confessed to law enforcement authorities that he and a second individual had kidnapped Cooper and seized his car at gunpoint. (Df. Ex. 3, at 4–5)[1]. During the interrogation, Sepulveda stated that he knew his accomplice only by the nickname of "Kung Fu," and that Sepulveda and Kung Fu had become acquainted through Kung Fu's sister. (Df. Ex. 3, at 2–3; Df. Ex. 4, at 4). Sepulveda and Kung Fu's sister both lived in Vineland, New Jersey at the time. (Df. Ex. 4 at 3–4). Sepulveda described Kung Fu to the investigating officers as Hispanic, approximately six foot tall, with black or brown eyes, a shaved head, and a "husky" build. (Df. Ex. 3, at 6–7).

Sepulveda explained that one day prior to the carjacking, Kung Fu had asked Sepulveda if he wanted to come to Camden with him, purportedly to visit Kung Fu's mother. (Df. Ex. 4, at 4). Sepulveda agreed, and the two men drove from Vineland to Camden in Kung Fu's pick-up truck. (*Id.*). Sepulveda further told the investigating officers that while in Camden, Kung Fu and Sepulveda were pulled over by a police officer and were issued summonses for driving an unregistered vehicle, driving an uninsured vehicle, and driving a vehicle with fictitious license plates. (Df.Ex. 5). The police also impounded the pick-up truck. (Df. Ex. 4 at 5). Sepulveda and Kung Fu slept in Camden that night at a house belonging to Kung Fu's mother. (*Id.*).

Sepulveda further explained during the interrogation that the next day, he and Kung Fu went "looking for a car." (*Id.*). They eventually came upon Cooper as he was entering his car at a restaurant in Pennsauken, New Jersey. (*Id.*). They kidnapped Cooper at gunpoint and took possession of his car. (*Id.*). They then drove the car into Camden, where they encountered Officer Busbee. (*Id.* at 6–7).

The Pennsauken Police Department, the Camden County Prosecutor's Office, and the federal Bureau of Alcohol, Tobacco, and Firearms ("ATF") each participated in the ensuing investigation designed to identify and

---

1. All defense exhibits refer to the exhibits submitted by defendant Gilbert, unless indicated otherwise.

apprehend "Kung Fu." Among the officers conducting the investigation were defendant James Graham, a detective with the Pennsauken Police Department, and defendant Bruce Gilbert, an investigator for the Camden County Prosecutor. (Df.Ex. 3, 4).

After an interview with Kung Fu's mother proved unhelpful, the investigating officers decided to attempt to locate Kung Fu by tracing the vehicle identification number of the impounded pick-up truck that Kung Fu had driven from Vineland to Camden. (Df.Ex. 8). A computer search revealed that the pick-up truck was registered to Richard Rodriguez of 419 Boyd Street, Camden, New Jersey. (*Id.*). Defendant Graham and defendant Gilbert proceeded to question Rodriguez, who stated that he had indeed owned the pick-up truck in question, but that he had sold it just a week or two earlier. (*Id.*). Rodriguez described the buyer of the truck as a Puerto Rican male, but said that he did not know his name. (*Id.*). Rodriguez explained that he had met the buyer through one of Rodriguez's neighbors, who lived at 387 Boyd Street. (*Id.*).

The officers then proceeded to interview the neighbor, named Joan Torres. Ms. Torres informed the officers that the person who had purchased Rodriguez's truck was her brother, Javier Torres Morales. Ms. Torres told the officers that her brother lived somewhere in Vineland. (*Id.*).

The investigating officers then ran a police computer search, which revealed that someone by the name of Javier Morales–Torres had been arrested in Mount Olive, New Jersey in September 1991 for selling cocaine. (Df.Ex. 9). Mount Olive police records indicated that Mr. Torres resided at 237 Bruckner Avenue, Staten Island, New York. (*Id.*). The Mount Olive Police Department forwarded to defendant Graham a picture of Mr. Torres, who is the plaintiff in this case. (Df.Ex. 8). The Mount Olive arrest report described plaintiff as a Hispanic male, 5' 10", 190 lbs., with brown eyes and brown hair. (Df.Ex. 9). The Mount Olive police report also indicated that Mr. Torres was also known as Javier Morales. (*Id.*).

At the heart of this case are the facts that led the investigating officers to conclude that plaintiff, Javier Morales, was the same Javier Torres Morales who owned the pick-up truck and had robbed and kidnapped Robert Cooper. The investigating officers answered this question in the affirmative after showing the photograph forwarded by the Mount Olive police to Hector Sepulveda, Richard Rodriguez, and defendant Busbee.

The record, however, contains conflicting evidence concerning what occurred during these three attempts to have a witness identify this plaintiff as "Kung Fu." After placing plaintiff's picture in a photo array, defendant Gilbert showed the array to Sepulveda for identification of Kung Fu. (Df.Ex. 8). According to Gilbert, upon being presented with the photo array, Sepulveda "just clam[med] up" and stated that he would no longer cooperate with the investigators. (Df. Ex. 11, at 27). Defendant Graham has essentially the same recollection. (Df. Graham Ex. 1). On the photo array identification form, however, Sepulveda drafted and signed a statement that provides: "From the pictures shown to me I wasn't able to indentif[y] Kung Fu." (Df.Ex. 10). That statement indicates that Kung Fu's picture was not among the array, which is different than the claim that Sepulveda simply refused to cooperate.

Subsequently, on December 29, 1992, Richard Rodriguez reviewed the photo array at the Camden County Prosecutor's Office and identified plaintiff's picture as the picture of the man to whom he sold his truck. (Df. Ex. 8; Df. Ex. 12). Rodriguez, in fact, signed his name to the back of the picture he identified as the truck buyer. (Df.Ex. 13). However, since the time he made that identification, Rodriguez has signed a statement indicating that his identification of plaintiff was tainted by defendant Graham. Rodriguez's statement provides:

> [A few days before the presentation of the photo array at the prosecutor's office, defendant Graham] visited me at work. He showed me ... nine black and white photos. I picked out the wrong photo of the guy who bought my truck. He told me which one was the right one. I explained ... that they all looked the same to me.... A few days later, a white detective came to my work to ask me to go to

the prosecutor's office in Camden, which I did. . . . They showed me another folder of black and white photographs. . . . I explained that I really didn't get a good look at the buyer because he had been in such a hurry. . . . I did, however, choose the photo to that [defendant Graham] had pointed out to me a couple of days before.

(Pl.Ex. A). When confronted with these accusations at his deposition, defendant Graham testified that he could not remember whether he had visited Rodriguez at work and showed him a photo array. (Pl.Ex. B). Graham also testified that he does not remember whether Rodriguez might have picked out the "wrong" photo at that time. (Id.).[2]

Also on December 29, defendant Officer Busbee appeared at the Camden County Prosecutor's office to attempt to make an identification of "Kung Fu" from the photo array. Defendant Gilbert testified at his deposition that Busbee identified plaintiff as Kung Fu without any hesitation or equivocation. (Df.Ex. 11). ATF Agent Kathleen Plasha also has testified that Busbee picked out plaintiff's picture and that Busbee did not seem to have any doubt about the identification. (Pl.Ex. 2). Busbee's identification of plaintiff's picture was also confirmed by defendant Graham. (Df. Ex. 8; Df. Ex. 14). At his deposition, however, Busbee insisted that he had not been able to pick out Kung Fu's picture from the photo array: "I couldn't identify the driver at all, because like I say I never had eye contact with him, I never focused on the driver of the car. . . ." (Df.Ex. 15). Moreover, unlike Richard Rodriguez, defendant Busbee did not sign the back of any of the photographs in the array. Thus, there is credible evidence that indicates that neither Busbee, Sepulveda, or Rodriguez gave a proper identification of plaintiff as Kung Fu.

The police never went back to speak with Joan Torres, Kung Fu's sister, to show her the picture of the suspect and ask her if the suspect was indeed her brother. (Df.Ex. 14). Similarly, the investigators did not ask Ms. Torres for her brother's birth date to confirm that the suspect in the Mount Olive arrest report had the same birth date as her brother, which would have indicated that the two men were actually the same person. At his deposition, defendant Graham explained that he did not return to Ms. Torres's residence because the first time he spoke with her she had been "totally uncooperative" and "reluctant to talk." (Id.).

On December 30, 1992, defendant Gilbert caused a warrant to be issued for the arrest of plaintiff. (Df.Ex. 16). The warrant contained plaintiff's date of birth and social security number as copied from the Mount Olive arrest report. The warrant listed merely "statement of co-defendant" as the probable cause for the arrest. (Df.Ex. 16).

On or about February 19, 1993, evidence against plaintiff was presented to a grand jury. Defendant Gilbert testified at the grand jury proceeding, explaining how the investigators had learned that Kung Fu's real name was Javier Torres Morales and how the Mount Olive police report had led the investigators to plaintiff. Gilbert told the grand jurors that Rodriguez and Busbee had both identified plaintiff as the man known as Kung Fu. (Df.Ex. 17). The grand jury subsequently indicted plaintiff.

On March 11, 1993, plaintiff, a resident of Staten Island, New York, was stopped for a motor vehicle violation on the Verrazano Bridge. When the apprehending officers learned of the outstanding New Jersey arrest warrant concerning plaintiff, plaintiff was arrested and incarcerated at the Camden County Jail. (Compl.¶ 11). Plaintiff was allegedly stabbed and injured in two assaults

2. Defendant Gilbert asserts that Rodriguez's statement is not proper evidence on a summary judgment motion because it is not made on the basis of personal knowledge and because it contains hearsay. These arguments are patently without merit. Mr. Rodriguez himself wrote and signed the statement, and it is apparent from the substance of the statement itself that the claims in the statement are based on Rodriguez's personal knowledge. At the conclusion of the statement, Rodriguez wrote that the statement "is true and correct to the best of my knowledge."

Defendant claims that the statement constitutes hearsay because it contains statements made by defendant Graham to Rodriguez. Such statements, however, are statements by a party-opponent, and thus not hearsay. See Fed.R.Evid. 801(d)(2).

while incarcerated. (*Id.* ¶ 15). He remained in the Camden County Jail until August 6, 1993, when he secured his release upon posting bail. (*Id.* ¶ 12). Plaintiff alleges that throughout his period of incarceration, he maintained that he was innocent and was the victim of mistaken identity. (*Id.* ¶ 13). On December 12, 1994, after twenty-four months of investigation, the Camden County Prosecutor's office agreed to dismiss all charges against plaintiff "based upon mistaken identification." (*Id.* ¶ 14).

Plaintiff thereafter filed his complaint in this case, alleging, among other claims, malicious prosecution and false arrest under 42 U.S.C. § 1983. In late–1996 and early–1997, each of the three named defendants in the complaint (Gilbert, Graham, and Busbee) moved for summary judgment, contending that there exists no genuine issue of material fact in this case and that defendants are entitled to judgment as a matter of law.

## Discussion

### I. Summary Judgment Standard

A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.*

In deciding whether there is a disputed issue of material fact the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. *See Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1080–81 (3d Cir. 1996); *Kowalski v. L & F Products,* 82 F.3d 1283, 1288 (3d Cir.1996); *Meyer v. Riegel Products Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby,* 477 U.S. at 250, 106 S.Ct. at 2511; *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 329–30 (3d Cir. 1995) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510) ("[T]he nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial.").

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Jalil v. Avdel Corp.,* 873 F.2d 701, 706 (3d Cir.1989), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). However,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders other facts immaterial.

*Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552. In such situations, "the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554; *Brewer,* 72 F.3d at 329–30 (citing *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53) ("When the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial.").

The non-moving party, here the plaintiff, "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue. Fed.R.Civ.P. 56(e). They must do more than rely only "upon bare assertions, conclusory allegations or suspicions." *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985) (citation omitted); *see Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Celotex*, 477 U.S. at 324–25, 106 S.Ct. at 2553–54. Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511.

Where one of the issues raised in defendants' summary judgment motion pertains to their assertion of qualified immunity, the court must decide whether the material facts are not in dispute and whether the officers are shielded by qualified immunity as a matter of law. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir.1995).

## II. *Plaintiff's Federal Law Causes of Action*

In his submissions to this court, plaintiff has not made himself entirely clear as to what causes of action he seeks to litigate in this case. Upon reading plaintiff's complaint and opposition to summary judgment, however, the court has concluded that plaintiff is attempting to raise claims of malicious prosecution, false arrest, false imprisonment, and conspiracy under the federal civil rights statutes. Plaintiff may also be attempting to

raise causes of action arising under the laws of the State of New Jersey. The court will address such possible state law causes of action in a separate section of this Opinion. *See infra* Section III.

As a general defense to each of plaintiff's claims, defendants contend that they are protected by the qualified immunity doctrine from plaintiff's request for monetary relief[3]. The qualified immunity doctrine provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A determination of qualified immunity requires the court to perform a two-pronged inquiry, as outlined in *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). First, the court must ascertain whether the plaintiff has alleged a violation of a clearly established right, and second, the court must determine whether the law was clearly established at the time of the alleged constitutional breach. *Id.* at 231–32, 111 S.Ct. at 1792–93. The Third Circuit has recently made clear that "to defeat qualified immunity it is not sufficient that the right at issue be clearly established as a general matter. Rather, the question is whether a reasonable public official would know that his or her *specific conduct* violated clearly established rights." *Grant v. City of Pittsburgh*, 98 F.3d 116, 121 (3d Cir.1996).

We first observe that plaintiff has asserted the violations of constitutional rights which are well-settled. Plaintiff claims he was arrested and prosecuted without probable cause to believe he was the Javier Torres Morales, a/k/a "Kung Fu" who was suspected of committing the carjacking. An arrest without probable cause violates the Fourth

---

**3.** Defendant Gilbert has also contended that he is protected by the doctrine of absolute immunity from plaintiff's claims that defendant Gilbert intentionally deceived grand jurors during his grand jury testimony. *See Briscoe v. La Hue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). In his brief opposing summary judgment, plaintiff acknowledged the rule of *Briscoe* and ex-

plained that his causes of action are based on the arrest and prosecution of plaintiff and not defendant Gilbert's grand jury testimony itself. (Pl. Br. at 9–10). Based on that explanation of plaintiff's claims, the court agrees that the absolute immunity defense is not available to the defendants in this case.

Amendment of the Constitution. The Third Circuit stated the relevant legal principles in *Orsatti v. New Jersey State Police, supra,* 71 F.3d at 482–83, as follows:

> The general principles of law that govern this case are well settled. Broadly stated, the Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 169, 92 S.Ct. 839, 847, 31 L.Ed.2d 110 (1972). Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt. *See United States v. Glasser,* 750 F.2d 1197, 1205 (3d Cir.1984). Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe than an offense has been or is being committed by the person to be arrested. *United States v. Cruz,* 910 F.2d 1072, 1076 (3d Cir.1990) (citing *Dunaway v. New York,* 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979)). When a police officer does arrest a person without probable cause, the officer may be liable in a civil rights suit for damages. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

> The second inquiry in determining whether the shield of law enforcement immunity has been lost, upon which much of the determination of this motion turns, is whether, as a matter of law, plaintiff has demonstrated that "a reasonably well-trained officer would have known that his affidavit [supporting an arrest warrant] failed to establish probable cause and that he therefore should not have applied for the warrant under the conditions." *Orsatti,* 71 F.3d at 483 (citing *Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986)). Immunity will therefore protect those officers who "reasonably but mistakenly conclude that probable cause to make an arrest is present." *Id.* But the shield of immunity will be lost if the circumstances are "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Id.* (quoting *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096).

The court will now proceed to determine whether defendants are entitled to summary judgment on each or any of the causes of action raised by plaintiff.

## A. *Malicious Prosecution*

█ Plaintiff's first cause of action is malicious prosecution, arising under the federal civil rights statutes. The Third Circuit has held that a claim for malicious prosecution is indeed actionable under 42 U.S.C. § 1983. *See Hilfirty v. Shipman,* 91 F.3d 573, 579 (3d Cir.1996); *Lee v. Mihalich,* 847 F.2d 66, 70 (3d Cir.1988). The elements of such a cause of action are as follows: (1) the defendant has initiated a criminal proceeding; (2) the proceeding ends in plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendant acts maliciously or for a purpose other than bringing the defendant to justice. *Lee,* 847 F.2d at 69–70.

█ "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Id.* The element of malice may be inferred from lack of probable cause. *See Dean v. Earle,* 866 F.Supp. 336, 340 (W.D.Ky.1994); *Voytko v. Ramada Inn,* 445 F.Supp. 315, 322 (D.N.J.1978) (applying New Jersey law).

### 1. *Defendant Graham*

Defendant Graham contends that he is entitled to summary judgment on plaintiff's claims of malicious prosecution because plaintiff has not presented any evidence that Graham acted with malice in this case. (Df. Graham Br. at 7). The court disagrees. There is credible evidence in the record that defendant Graham intentionally and impermissibly tainted Richard Rodriguez's attempts to identify "Kung Fu" from a photo array, and that Graham's interference resulted in plaintiff being wrongly identified by Rodriguez and then indicted and arrested. As noted, according to Rodriguez, when Graham first approached Rodriguez to pick out Kung Fu's photograph, Graham picked out the "wrong" picture and was instructed by

Graham as to which was the "right" picture. (Pl.Ex. A). Then, when detectives brought Rodriguez to the police station, Rodriguez allegedly followed Graham's suggestion and identified plaintiff as the man known as Kung Fu. (*Id.*). At his deposition, defendant Graham did not specifically deny Rodriguez's allegations, but instead stated that he could not remember if what Rodriguez claims is true. (Pl.Ex. B).

If the jury were to credit Rodriguez's testimony, it could reasonably conclude that defendant Graham acted with malice in an attempt to ensure the arrest and indictment of plaintiff in spite of Graham's knowledge or suspicion that plaintiff was not the "Kung Fu" for whom the police were searching. Such a conclusion would find further support in defendant Busbee's claim that he never identified plaintiff as Sepulveda's accomplice. The jury could further conclude that Graham was grossly negligent in not approaching Kung Fu's mother or sister to seek confirmation that plaintiff and Kung Fu were the same person. In short, there is ample evidence as to defendant Graham's malice in this case.

■ There is also credible evidence that supports the remaining elements of a malicious prosecution cause of action against defendant Graham. A reasonable jury could find that defendant: Graham helped to initiate a criminal proceeding against plaintiff, that plaintiff was subsequently cleared of all charges, that defendant Graham knew from the outset that the charges against plaintiff were without probable cause and that there was insufficient evidence establishing that plaintiff was "Kung Fu," that defendant Graham acted with malice in pushing forward with the investigation of plaintiff in spite of such knowledge, and that Graham tainted evidence to secure an indictment in this case. As to the probable cause issue specifically, if jurors credit the testimony of defendant Busbee and Richard Rodriguez, they could reasonably conclude that defendant Graham prosecuted plaintiff knowing that there was no untainted evidence that demonstrated that plaintiff was Kung Fu, other than similarity of rather common names. Such a conclusion could lead to the finding that there was no probable cause in this case. Because there exist genuine issues of material fact as to these questions, defendant Graham is not entitled to summary judgment on plaintiff's claim of malicious prosecution.

Moreover, defendant Graham is not immune from plaintiff's malicious prosecution claim on the grounds of qualified immunity. If the evidence pointed merely to the mistaken identity of the suspect due to good faith confusion in names, defendant Graham's claim of qualified immunity could have had some force. Federal qualified immunity recognizes that police work is difficult, that the investigation of crimes requires exercise of judgments that should not ordinarily be second-guessed, that an investigating officer must make educated guesses about investigative leads that may turn out to be blind alleys or completely erroneous, and that the investigative law enforcement officer should not be chilled in taking aggressive lawful action to attempt to solve crimes, even if mistakes are made. For example, where a reasonable investigation nonetheless leads to the misidentification of the wrong suspect, the law enforcement officer is immune from suit where there is an objectively reasonable basis for the mistaken identification. *See Maltby v. Winston*, 36 F.3d 548, 555–58 (7th Cir.1994); *Simkunas v. Tardi*, 930 F.2d 1287, 1291–92 (7th Cir.1991).

■ In the present case, however, there was no evidence developed against the plaintiff, other than having a name similar to the suspect. The only positive photo identification—by Rodriguez—was allegedly tainted by Graham, and allegations that officer Busbee identified plaintiff are apparently untrue, since Busbee has testified he did not have an opportunity to observe him. The suspect was believed to live in Vineland, while plaintiff lived in New York City, with no known ties to South Jersey. The suspect's birth date was never developed, nor were those who knew him, such as his sister, pressed for any details. The arrest and prosecution were launched upon the similarity of names and nothing more, as the jury may so find. Accepting plaintiff's factual allegations as true for the purposes of this summary judgment motion, and as required for testing a

claim of qualified immunity, *see, e.g., Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir.1993); *Simkunas v. Tardi*, 930 F.2d 1287, 1291 (7th Cir.1991), it is apparent that a reasonable official in Graham's position would have known that his conduct violated clearly established rights protected by 42 U.S.C. § 1983. *See Grant*, 98 F.3d at 121. The circumstances are so lacking in indicia of probable cause to believe that plaintiff was the individual who perpetrated the carjacking, that it can be said, as a matter of law, that if plaintiff establishes this chain of events at trial, no reasonable police officer could have had a good faith belief that plaintiff was the perpetrator. If proved, such conduct does not constitute a discretionary act that defendant Graham could have, in good faith, believed to be lawful. Defendant Graham is therefore not entitled to summary judgment on plaintiff's malicious prosecution claim on the basis of the qualified immunity doctrine.

### 2. *Defendant Gilbert*

The court also concludes that defendant Gilbert is not entitled to summary judgment on plaintiff's malicious prosecution cause of action. Like defendant Graham, defendant Gilbert contends that he is entitled to judgment as a matter of law on this claim because there is no evidence in the record that he acted with malice in bringing about plaintiff's arrest and indictment. (Df. Br. at 25). Defendant Gilbert argues specifically that there is no evidence in the record that demonstrates that he was aware of defendant Graham's alleged tainting of Richard Rodriguez's identification of plaintiff. (Df. Rep. Br. at 1, 12).

Concededly, there is no direct evidence demonstrating that Gilbert knew of or condoned Graham's alleged attempt to influence Rodriguez to select plaintiff's picture from the photo array. The record does indicate, however, that Graham and Gilbert were working very closely together on this case, essentially acting in concert as an investigation team. Moreover, like Graham, Gilbert failed to approach Kung Fu's mother or sister with a picture of plaintiff (or with plaintiff's birth date) to confirm that plaintiff was indeed Kung Fu. Also like Graham, Gilbert insists that defendant Busbee identified plaintiff as Kung Fu, while Busbee denies that claim and there is no written documentation of such an identification.

Perhaps most importantly, defendant Gilbert testified at his deposition that Sepulveda refused to cooperate when asked to identify his accomplice from a photo array. The photo array identification form, however, contains Sepulveda's signed statement that provides: "From the pictures shown to me I wasn't able to identif[y] Kung Fu." That statement indicates that Sepulveda did not see his accomplice's picture among those in the array, an assertion that is rather different from defendant Gilbert's claim that Sepulveda refused to cooperate.

In addition, in completing the arrest warrant, defendant Gilbert listed the probable cause for plaintiff's arrest as "statement of co-defendant." Such an assertion is suspicious at best in view of defendant Gilbert's own representation that Sepulveda had ceased cooperating with the police and did not pick out plaintiff's picture from the array. In fact, Sepulveda had not in any way connected plaintiff to Kung Fu, Sepulveda's accomplice. To the contrary, Sepulveda's information pointed toward an accomplice from Vineland, which was corroborated by "Kung Fu's" sister and mother. A jury could find that the fact that defendant Gilbert nevertheless listed Sepulveda as the basis for probable cause for plaintiff's arrest is compelling evidence that Gilbert did not have probable cause for plaintiff's arrest and that he knew that he did not.[4]

---

**4.** As defendant Gilbert argues, the record indicates that a prosecutor approved the issuance of the arrest warrant and thus apparently agreed with Gilbert as to the existence of probable cause in this case. (Df. Ex. 11, at 75-7 to -18). This evidence is of minimal import, however, without knowing the substance of the representations Gilbert made to the prosecutor concerning the evidence against plaintiff. Gilbert may have told the prosecutor that two witnesses (Busbee and Rodriguez) identified plaintiff as the perpetrator. A jury could find, however, that Gilbert himself knew that Busbee had not selected plaintiff's picture from the photo array and that Rodriguez's identification of plaintiff had been tainted by defendant Graham.

■ Under these circumstances, defendant Gilbert's claim of qualified immunity fails. The test, again, is whether Officer Gilbert, upon the basis of information known to him, had an objectively reasonable basis to believe he had probable cause to arrest plaintiff for the Camden carjacking. *Orsatti*, 71 F.3d at 484. At the time of arrest, Gilbert knew that a crime had been committed in Camden, that the accomplice (Sepulveda) identified his cohort as "Kung Fu," whom he had met in Vineland, and that "Kung Fu's" mother and sister lived in Camden. He knew that Kung Fu had driven a pick-up truck the day before the carjacking which had been purchased from Richard Rodriguez of Camden. Rodriguez didn't know the purchaser, but he knew the purchaser's sister, Joan, in Camden, who identified her brother's name as Javier Torres Morales. Upon these facts, Gilbert pursued the case against Javier Morales of Staten Island, New York, who had a similar Hispanic name and a prior record of a North Jersey arrest related to selling cocaine, but no known connection to Vineland or Camden and no clear photographic identification. Plaintiff's arrest for the traffic violation on the Verrazano Bridge near his Staten Island home adds nothing to the element of probable cause. Under these circumstances, if these facts are proved to a jury, the facts known to Gilbert were so lacking in the indicia of probable cause that no reasonable law enforcement officer could have entertained a reasonable belief in the existence of probable cause to arrest, thus rendering qualified immunity unavailable.

Taken together, on the merits of the summary judgment motion, there is sufficient, credible evidence in the record to permit a factfinder to conclude that defendant Gilbert acted with malice in investigating and bringing charges against plaintiff. As defendant Gilbert argues, there is no evidence in the record indicating that Gilbert knew plaintiff prior to December 1992 or that he felt any personal animus toward him. On the other hand, a reasonable jury could find that perhaps because of an overzealous desire to "collar" a suspect[5] or for more nefarious reasons, defendant Gilbert acted with willful blindness toward and intentional avoidance of the evidence that would eventually establish plaintiff's innocence.

In fact, the evidence in the record has led Donald T. Robinson, plaintiff's proposed expert in the field of police procedures, to conclude that Gilbert and Graham "manipulated the evidence" and "knew or should have known that they had identified the wrong person." (Pl.Ex. F). Robinson criticizes Graham and Gilbert for not investigating plaintiff in New York and for not questioning Kung Fu's sister to establish that plaintiff was indeed Kung Fu. Robinson states:

> To someone familiar with police procedure one of the most striking aspects of this case—it jumps at you from the record—is that the detectives clearly avoided, or did not report on, or lied about any investigative activity or information which may have cleared or tended to clear Mr. Morales–Torres.... Why would these detectives not, at least, go back to Ms. Torres to ask, "Is this your brother?"

(*Id.*).

■ The court finds that the record contains ample evidence to permit a jury to conclude that Gilbert conducted this investigation and secured this indictment with ill will toward plaintiff and with willful blindness as to plaintiff's innocence. Defendant Gilbert is therefore not entitled to summary judgment on the grounds of insufficient evidence of malice.

---

5. Evidence of the zeal of the team of investigating officers in this case is found in deposition of defendant Busbee as he describes the atmosphere during his attempt to identify Kung Fu's picture from the photo array:

> I went back to the little room and there were some people inside ..., and as I walked in I could remember someone saying, oh, this is Busbee, I know his father, because my father was on the force for twenty-five years, I know

he is going to identify him, and so forth and so on, it was like really eager....

> I looked at these pictures and I couldn't identify anybody, and I remember one of the guys in there was like ... shit, God damn it, he was really upset that I couldn't make a positive identification of the driver.

(Pl.Ex. D). Defendant Gilbert was one of the individuals present during Busbee's attempt to identify Kung Fu. (Pl.Ex. 2).

■ In summary, defendant Gilbert is not entitled to summary judgment on the basis of his assertions of qualified immunity, nor upon the merits of the plaintiff's case. Plaintiff has put forth evidence on the basis of which a juror could properly infer that this defendant maliciously acted to ensure plaintiff's prosecution absent probable cause. Defendant Gilbert's acts, as alleged by plaintiff, are not mere discretionary acts that a reasonable person could have believed to be lawful. As to the probable cause issue specifically, a jury could find that no reasonable person in defendant Gilbert's position could have believed that there existed probable cause connecting plaintiff to Kung Fu. Certainly, the probable cause put forth by Gilbert himself on the arrest warrant application—"statement of codefendant"—did not provide such probable cause. A reasonable jury could credit the testimony of defendant Busbee and Richard Rodriguez and conclude that defendant Gilbert knew of no credible evidence that demonstrated that plaintiff was Kung Fu. In fact, the jury might infer from Sepulveda's signed statement and Rodriguez's statement implicating Graham that defendant Gilbert knew that one or more witnesses had specifically indicated that plaintiff was not Kung Fu. Moreover, jurors could agree with Donald Robinson and find that defendant Gilbert deliberately did not pursue certain areas of investigation in order to ensure that he would not come upon other exculpatory evidence in this case. Because plaintiff may be able to prove that defendant Gilbert violated plaintiff's clearly established civil rights, summary judgment is not appropriate as to plaintiff's malicious prosecution claims against defendant Gilbert. *See Grant,* 98 F.3d at 121.[6]

### 3. *Defendant Busbee*

Defendant Busbee has moved for summary judgment as to plaintiff's malicious prosecu-tion claim on the grounds that Busbee did not participate in the prosecution of plaintiff. The court agrees with defendant Busbee's argument, and will grant summary judgment on this ground.

As discussed previously, defendant Busbee was the officer who initially encountered Hector Sepulveda and Kung Fu. He participated in the arrest of Mr. Sepulveda. The record is uncontroverted, however, that Busbee did not "initiate" or even actively participate in the arrest or criminal prosecution of plaintiff. Such initiation of prosecution is a critical element in a malicious prosecution claim. *See Lee,* 847 F.2d at 70.

■ Busbee's only involvement with the prosecution of plaintiff came when Busbee was asked to look at a photographic lineup and pick out the picture of Kung Fu. There is a factual dispute as to whether Busbee selected plaintiff's picture from the array, but that dispute is not a "material" one for purposes of this summary judgment motion. Even if Busbee identified plaintiff as Kung Fu at the photographic lineup, that would not render him a prosecuting officer in this case. Rather, so far as the record indicates, Busbee was a mere witness in the investigation and prosecution of plaintiff, which were being orchestrated by, among others, Gilbert, Graham, and the ATF. *See Senra v. Cunningham,* 9 F.3d 168, 174 (1st Cir.1993) (discussing degree of involvement of defendants in decision to bring criminal charges against plaintiff, in evaluating possible merit of malicious prosecution claim); *cf. Williams v. Hepting,* 844 F.2d 138, 141 (3d Cir.1988) (discussing absolute immunity for witnesses testifying in pretrial proceedings and policy reasons justifying that immunity). In addition, there is no evidence that Busbee knowingly gave false information inculpating plaintiff or that Busbee actively encouraged the arrest or prosecution of plaintiff. *See*

---

**6.** Defendant Gilbert also seems to argue that the grand jury's finding of probable cause and the indictment of plaintiff immunizes Gilbert from plaintiff's claims in this case. Gilbert, however, provides no legal support for such a claim. In fact, a grand jury indictment does not preclude a finding that probable cause was missing. *See Zalewski v. Gallagher,* 150 N.J.Super. 360, 368, 375 A.2d 1195 (App.Div.1977). Gilbert's argu-ment is also without merit in view of the fact that a reasonable petit jury could find that the grand jury indicted plaintiff only because of misinfor-mation that defendant Gilbert provided to the grand jurors. For example, Gilbert told the grand jurors that both Rodriguez and Busbee had identified plaintiff as Kung Fu, which may be found to be erroneous or misleading.

*Devlin v. Greiner,* 147 N.J.Super. 446, 471, 371 A.2d 380 (Law Div.1977) (stating that to be held liable for malicious prosecution, defendant must "'take some active part in instigating or encouraging the prosecution'") (quoting Prosser, *Law of Torts* § 119, at 836–37 (4th ed.1971)). The court will therefore grant summary judgment to defendant Busbee as to plaintiff's claims of malicious prosecution.

### B. *False Arrest/False Imprisonment*

Plaintiff's complaint also alleges that defendants falsely arrested and imprisoned plaintiff, in violation of plaintiff's constitutional rights and section 1983. The court finds that defendants are entitled to summary judgment on these claims. As the court will proceed to explain, because plaintiff was arrested and imprisoned pursuant to legal process, a false imprisonment or false arrest cause of action is not available to plaintiff in this case.

 Although courts and litigants often confuse the two, false arrest (also referred to as false imprisonment) and malicious prosecution are two distinct causes of action. *See Torres v. McLaughlin,* 1996 WL 680274, at *3–4 (E.D.Pa. Nov.21, 1996). Generally, only one or the other cause of action is available to a plaintiff in a given case. The Supreme Court has recently explained the distinction between these causes of action in noting that where confinement has been "imposed pursuant to legal process," damages may be sought on a theory of malicious prosecution, but not under a claim of false arrest or imprisonment. *Heck v. Humphrey,* 512 U.S. 477, 484, 114 S.Ct. 2364, 2371, 129 L.Ed.2d 383 (1994). "'If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.'" *Id.* (quoting W. Keeton et al., *Prosser and Keeton on Law of Torts* 888 (5th ed.1984)). The "legal process" that separates a false arrest/imprisonment claim from a malicious prosecution claim may be in the form of an arrest warrant, an arraignment, or an indictment. *See Singer v. Fulton County Sheriff,* 63 F.3d 110, 117 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996). As Prosser has explained:

> So long as the plaintiff has been detained by legal process, it cannot be said that he has been falsely imprisoned and the claim, if there is one, must be for malicious prosecution, where malice and a want of probable cause must be shown. If there is no process issued at all and the plaintiff is arrested without a warrant or any other valid basis for an arrest, there is no malicious prosecution but a false arrest. Where an unjustified detention takes place, followed by an improper prosecution, the plaintiff may be required to assert both false imprisonment and malicious prosecution....

W. Page Keeton et al., *supra,* at 885–86 (*quoted in Torres,* 1996 WL 680274, at *4 n. 4).

 In the present case, by the time that plaintiff was apprehended and incarcerated, a duly executed arrest warrant had been issued and plaintiff had been indicted. Thus, plaintiff may not bring claims against these defendants under the rubric of false imprisonment or arrest, but rather must satisfy the elements of malicious prosecution to obtain recovery for his alleged unlawful detention. Defendants are therefore entitled to judgment as a matter of law on those aspects of the complaint that allege false arrest or imprisonment.[7]

### C. *Conspiracy*

Plaintiff's complaint also charges the three defendants with conspiring to deprive plaintiff of his constitutional rights. (Compl. at 12). Neither the complaint nor plaintiff's response to defendants' summary judgment motions sets forth a statutory or other legal

---

7. The court notes that the malicious prosecution cause of action does afford plaintiff an opportunity to receive all of the damages plaintiff is seeking in this case. "[A] successful malicious prosecution plaintiff may recover, in addition to general damages, 'compensation for any arrest or imprisonment, including damages for discomfort or injury to his health, or loss of time and deprivation of the society,'" *Heck,* 512 U.S. at 484, 114 S.Ct. at 2371 (quoting W. Keeton, *supra,* at 887–888).

basis for plaintiff's conspiracy claims. However, because plaintiff refers to the federal civil rights statutes in his complaint, the court will assume that plaintiff is seeking recovery for the alleged conspiracy under 42 U.S.C. § 1985. The defendants have made the same assumption in their summary judgment motion, and plaintiff has not argued that such an assumption is unwarranted.

 Section 1985 provides a private right of action to those persons who have been victims of a conspiracy to deprive them of their civil rights. One of the elements of a section 1985 claim is that the plaintiff must prove that there was " 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.' " *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 829, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1982) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)). In this case, plaintiff has made no showing in this regard. The complaint does not allege that defendants' alleged conduct was motivated by class-based, invidiously discriminatory animus, and there is no evidence in the record that would support such a claim. Defendants will therefore be granted summary judgment as to plaintiff's section 1985 conspiracy claims.

### III. *Plaintiff's State Law Causes of Action*

It is difficult to ascertain whether plaintiff is attempting to obtain recovery on the basis of state law causes of action in this case. The complaint states in relevant part:

1. At all times material hereto, *plaintiff is entitled to assert* causes of action arising by law under the *Constitution and Statutes of the State of New Jersey* of which this Court has pendent jurisdiction.

2. Defendant[s], Busbee, Gilbert, Graham and John Doe(s), jointly and severally, acted intentionally recklessly, negligently, and with gross negligence in the false arrest, false imprisonment and malicious prosecution of plaintiff causing the injuries and damages as outlined herein.

(Compl. at 13 (emphasis added)). Although the complaint seems at least to leave open the possibility that plaintiff will litigate state law claims in this case, plaintiff's response to defendants' summary judgment motions implies that plaintiff is not seeking to do so. Defendants moved for summary judgment on any state law claims in this case on the grounds that plaintiff has not complied with the notice provisions of the New Jersey Tort Claims Act, N.J.S.A. § 59:8–1 et seq (the "Act"). Plaintiff responded, in part, by stating that the Act "does not apply to this action" because it "does not apply to federal civil rights violations." (Pl. Br. at 19). That portion of plaintiff's response thus indicates that plaintiff does not intend to pursue any state law remedies in this case. To further confuse matters, however, plaintiff's brief continues, "In the event that this Court deems any of plaintiff, Morales', claims as state common law claims, then this Court would still have pendent jurisdiction over those claims." (Pl. Br. at 19). In short, the court is unsure as to whether plaintiff is raising state law causes of action in this case, and, if he is, under which specific causes of action plaintiff seeks recovery.

It is the plaintiff's burden on a defendant's summary judgment motion to come forward with evidentiary materials in support of the plaintiff's affirmative claims. *See supra*, Section I. This court will not sift through the complaint, the parties' submissions, and the evidentiary record in order to select certain state law causes of action for plaintiff and then analyze whether the plaintiff may be legally entitled to proceed to trial on such causes of action. In opposing defendants' summary judgment motions, plaintiff had an obligation to set forth the causes of action he is pursuing and explain why defendants' arguments do not compel the granting of summary judgment in defendants' favor as to those claims. Plaintiff, however, continues to employ ambiguous language in refusing to commit himself as to what legal claims he wishes to raise in this two-year-old case. The court will not countenance plaintiff's efforts to insist that he is "entitled" to bring certain state law claims (Compl. at 13), to imply that he is bringing only federal law causes of action, and then seemingly to invite the court to "deem" some of his claims as state common law claims.

For example, it appears that the availability of certain state law causes of action to plaintiff may be affected in this case by the date of accrual of the cause of action in question. *See* N.J.S.A. § 59:8–3 (barring claims against public employees where proper notice of claim is not given, but applying only to claims that accrued after June 23, 1994). The date of accrual in this case depends on the particular cause of action plaintiff may be seeking to raise. For instance, because an element of a malicious prosecution claim is that the proceeding has ended in the plaintiff's favor, *Lind v. Schmid,* 67 N.J. 255, 262, 337 A.2d 365 (1975), such a claim could not accrue until charges were dropped in this case, in December 1994. Other state law causes of action potentially available to plaintiff may have accrued earlier, such as at the time of plaintiff's March 1993 arrest. This court will not parse through plaintiff's factual contentions and New Jersey case law to find which common law torts may be available here, and then determine the date of accrual of each of those torts. Instead, the court will follow plaintiff's apparent suggestion (Pl. Br. at 19) and interpret the complaint as raising federal law claims only. The court will thus grant summary judgment to defendants as to any state law claims in this case.

### Conclusion

Defendants Graham and Gilbert are not entitled to summary judgment on plaintiff's claims of malicious prosecution, which have been brought pursuant to 42 U.S.C. § 1983. As to plaintiff's other claims against these defendants, however, the court will grant defendants' summary judgment motions.

The court will also grant summary judgment to defendant Busbee as; to all claims against Busbee contained in the complaint.

The only claims thus remaining for trial are plaintiff's claim for malicious prosecution in violation of 42 U.S.C. § 1983 as alleged against defendants Graham and Gilbert.

The accompanying Order is entered.

### ORDER

This matter having come before the court upon the summary judgment motions brought by the three defendants in this case pursuant to Fed.R.Civ.P. 56; and the court having considered the submissions of the parties; and for the reasons stated in the Opinion of today's date;

IT IS this 20th day of June 1997 hereby

ORDERED that defendant Busbee's motion for summary judgment is hereby *GRANTED;* and it is

FURTHER ORDERED that defendant Graham's motion for summary judgment is hereby ***GRANTED IN PART AND DENIED IN PART,*** as follows: defendant Graham's motion for dismissal based upon qualified immunity is hereby *DENIED;* defendant Graham's motion for summary judgment is hereby *DENIED* as to plaintiff's claims of malicious prosecution, brought pursuant to 42 U.S.C. § 1983; defendant Graham's motion for summary judgment is hereby *GRANTED* as to all other claims brought by plaintiff against defendant Graham in this case; and it is

FURTHER ORDERED that defendant Gilbert's motion for summary judgment is hereby ***GRANTED IN PART AND DENIED IN PART,*** as follows: defendant Gilbert's motion for dismissal based upon qualified immunity is hereby *DENIED;* defendant Gilbert's motion for summary judgment is hereby *DENIED* as to plaintiff's claims of malicious prosecution, brought pursuant to 42 U.S.C. § 1983; defendant Gilbert's motion for summary judgment is hereby *GRANTED* as to all other claims brought by plaintiff against defendant Gilbert in this case.